The Honorable Robert D. McCarty, presiding.  The Honorable Robert D. McCarty, presiding. The Honorable Robert D. McCarty, presiding. The Honorable Robert D. McCarty, presiding. May it please the court, counsel. My name is Pamela Wells. I am arguing on behalf of the people today. The only issue before this court is whether the Terry stop was supported by reasonable suspicion or as the trial court said, it was an arrest that was not supported by general public cause. The Terry stop is when in a trickle suspicion of criminal activity, it's an objective standard. It's under the totality of the circumstances and it has to take into account the common sense judgments of the officers regarding human behavior. So in this case, a Terry stop is no different than an arrest in that a person isn't free to leave. And the courts have determined that the difference between Terry stop and arrest is the length of the detention and the scope of the investigation following the initial stop. Is the arrest any different than a seizure? Yes, arrest is definitely different than seizure because under a Terry stop, the person is seized. It just is determined whether the length of the detention and the scope of the investigation differentiates a Terry stop from an arrest. Taking the keys, in this case it was at the request of the officer, not a command, correct? It was a request to see the keys and he voluntarily turned them over, yes. And is that any different than asking a person who's stopped if you can search the car? No, I don't believe it is any different. The defendant consented to turning over the keys? Absolutely. So your position is that this was purely an investigative detention and not an arrest? It was an investigative detention and not an arrest and that is based on four things in this particular case. The defendant was in the driver's seat of the white Cadillac at the Shell gas station near the propane tanks. That is the description that the officer was given to respond to. So she was responding to that. Secondly, she immediately upon contact, and it doesn't take long, she's seen right by the window, she immediately smells the strong odor of an alcoholic beverage and she observes glassy eyes, slurred speech, which are signs of impairment. Thirdly, the defendant responded he had no clue when asked a very simple question of whether he'd been in an accident, whether he'd hit anything, a deer or anything else. And fourthly, the defendant appeared disoriented. His responses were delayed. His movement was slow and delayed. So under those three things, I'm sorry, four things, the officer had developed reasonable suspicion to conduct a terrorist attack and that is a seizure. So based on the reasonable suspicion, you then look at the length of the detention and the scope of the investigation following the detention. In this case, every single thing the officer asked had to deal with the driving of the defendant and it had to deal with the investigation of whether he was impaired. So she was following up on her reasonable suspicions as part of the scope of the investigation. Based on those two things.  It was the four things that gave the reasonable suspicion. The two things, the length of the detention and the scope of the investigation, are what differentiates the terrorist attack from the arrest. Did you measure the time it took from the officers tapping on the window until the keys were given? Thirty seconds, Your Honor. And is there any case law that puts a number on what amount of time will transfer a case from a reasonable detention to an arrest? No. It's the facts and circumstances of each unique case, correct? It is the totality of the circumstances, Your Honor. And in this case, the 30 seconds, she's standing right by the window. She can smell the odor of alcohol, beverage. She's having conversations with him where he's throwing up his hands and he says he doesn't have a clue whether he hid anything. Mr. Dixon argues in his brief that People v. Bailey is directly on point. Why is that case not directly on point and why shouldn't we follow it? So it's not directly on point for two reasons. In this case, there was no argument made in the Bailey case that the officers' actions were not an arrest, so the state forfeited that issue. Secondly, it's factually distinguishable. I'm sorry, I keep using my numbers. But second, it's factually distinguishable because there was, in Bailey, there was no odor of alcohol, beverage, or signs of impairment, which the officer Wortman clearly had here. And we have, in Bailey, the really significant factors. Matter of fact, the court commented on the use of the keys to access the vehicle without probable cause, which the officer just couldn't do. So even if confiscation of the keys was deemed reasonable based on the legitimate public interest of the officer's safety, in our case, we have a car with somebody behind the wheel who appears impaired, disoriented, and gas pumps are right ahead of it that you can see on the video. So even if the taking of the keys in Bailey was legitimate for the officer's safety, in that case, they went beyond, which goes back to the scope of the investigation, and they used the keys to enter the car illegally. So clarify for me why it was necessary to take the keys? In this case, it was the officer's safety. He was not parked in a parking spot next to a car. He wasn't parked at a gas pump. There was a fob so the car could be started immediately and driven off. There were gas pumps right in front of the vehicle, and the officer's standing next to it, and she has someone who has no clue if he hit something. He smells of alcohol. And for her own safety, as the court in Johnson indicated, for her own safety, she took the keys to maintain the status quo and her safety. You know, how many DOI arrests are made or stops are made every day? Is it common to ask for the keys? I can't answer the question of whether it's common. I know the officer did in this case for her safety because she testified to that. Police officers, generally speaking, are entitled to control what's taking place at any traffic stop, correct? That's absolutely correct. They can order a passenger out of the vehicle to remain in the vehicle. They can order the driver out of the vehicle or remain in the vehicle, and it's up to the officer based upon the unique circumstances that he's presented with, correct? Absolutely, Your Honor. As a matter of fact, Terry itself dealt with a pat-down search, which was the officer controlling the situation. Coiler was a handcuffing of the offendant to control the situation. So if you look at the cases that we cited, and I believe that's starting on page 21 of my brief, Maxie, all of those cases talk about an officer using restraint. And in this case, all the officer did was ask to see the keys. She didn't order. I'm sorry. How do you know? How do I know that she asked to see the keys? Because it's on the video. Pardon? It's on the video. She says, you have your keys on you. Can I see them for a minute? And he says, yes, and hands them over. So it wasn't her, you know, her tone of voice was conversational. She was not demanding. She didn't have her gun out. She was alone. So based on the video itself. Unless she had her gun out, would that invalidate the request? No, it just would be one factor under the totality of the circumstances. Please hand over your wallet. That's a request, huh? Yes. But I think it is a factor that would have to be determined whether that was a seizure and whether the officer, it was a request versus an order. And regardless, if it's a seizure, as I have repeated over and over again, it doesn't,  A tear itself was a seizure. Coiler was a seizure. They're all seizures. And so you cannot distinguish the arrest versus a tear stop based just on the fact that it's a seizure. That's why the court has to look at the length of detention and the scope of the investigation following the detention. If there are no other questions, I have covered my points. I may have a question. Let me look at your prayer. Absolutely. You asked that we reverse the trial court's order. Yes. And remand for further proceedings. You don't ask for any other relief that might be just and equitable under the circumstances. That's called boilerplate. That is boilerplate. And I'm just asking that the trial court's finding that the suppression was granted would be reversed, and then we would be back in the process of the trial court. Okay. Very good. I have one question. Yes, ma'am. At the petition to rescind hearing, did the police officer ever mention anything about propane tanks or gas tanks? She wasn't asked, and it was a completely different purpose of that hearing. But isn't that a basis for her safety for the tanks? Which was discussed in the motion to suppress statements hearing when she was specifically asked about it. And the propane tanks can also be seen in the video, and it's an objective standard. And I think the gas tanks that are directly in front of the car are even more of a safety concern in this particular case, Your Honor. Thank you. There wasn't any dynamite in the area. There was not. There was a two-ton vehicle. Do I have an opportunity to make a rebuttal? Yes. Thank you, Your Honor. Mr. Dixon, you may proceed. Thank you. Justices, may it please the Court, my name is Liam Dixon. I represent Mr. Pellegrino, the appellee in this case. In listening to the arguments here, I have a few distinctions as far as I think what the facts were on this and what the basis for this seizure was. And we do agree a seizure and an arrest are different. However, I think there's a middle ground here because in the case that we did, the site of Biagio, they talk about an officer can examine an individual's identification, ask them for identification, ask them other questions without turning it into a seizure. In this case, and I believe it was 29 seconds, the officer seized the keys. And I know Your Honor asked about, well, it was a consensual. The statement that he gave was not, okay, here you are. It's, oh, we're here already. This was in relation to an officer demanding the keys. I'm going to take your keys, give them to me. He wasn't doing this consensually is our argument based on the statements. We can watch the tape and make our own determination, correct? The recording, we have to use recording. It's no longer a tape. I'm old school. How is that different? I mean, how does that transfer into a seizure? It turns into a seizure the same way as blocking in a car if they are not free to leave. The officer is now taking this individual's right to drive. At his request, though. At his request. They requested it. How is that different than the motorist is pulled over for traffic violation and the officer is completing the traffic ticket. And he said, by the way, as long as you're here, do you mind if I search the car? Right. And, again, I don't take issue with that. If they said, yeah, it's fine, or it's, oh, we're here already. What about ordering the passengers to get out of the car while an officer completes his preliminary investigation? Is that a seizure? I believe those individuals are seized at the stop. If those individuals are not allowed to leave. The Supreme Court says the officer has control, and it's not a seizure. And we don't take issue with that. But they are allowed. I think when the individual is there, I think they are seized if they are not free to leave at that point. Because of the fact that they're seized does not transform it into an arrest. They're detained. A detention is a seizure that implicates the Fourth Amendment, but it does not result in a suppression. It's one factor, but they're not. He's seized for purposes of detaining and determining what's going on here. If the officer smells alcohol, he or she notices there are signs of impairment. And I think the trial court did take issue with some of those signs, Your Honor. The trial court indicated that they did not hear any slurred speech. That's what I call the videotape myself, so I'm honest at all. The trial court also indicated that during the investigation, there was talk about whether the smell of alcohol was coming from the car or from the individual itself, and noted that usually they can determine alcohol coming from breath once they get out of that vehicle. At this point, within one or two questions, that individual was seized, and there had been nothing, nothing indicating that there was any criminal activity afoot. The officer testified that she smelled alcohol. Understood. And again, the trial court, I think, took issue with the credibility of that officer in several instances, but including in that one. Did he state specifically that he didn't believe that statement? He didn't state specifically. I think the statement was normally they're not able to tell or officers aren't able to tell until they get out of the car, and there was some waffling as far as whether it was coming from within the car or on the breath. What page of the internet? I see it here, I think. He said he did not see it as a terry seizure. I think the officer looks, she's there, again, community caretaking function, she may be the information, et cetera. So basically he says her presence there is, quote-unquote, a community caretaking function. Why can't the officer ask for the keys? I think you're seizing an individual without any, and again, this is not a case. You keep saying a seizure is an arrest. A seizure is not an arrest. A detention for purposes of investigation is a seizure, but it's not a full-blown arrest. You have to have proper cause for an arrest to take somebody into custody and take them to the station. A reasonable detention to determine what's going on here is a seizure, but if it's justified by reasonable suspicion, and here it's not reasonable suspicion. It doesn't even have to get there because you've got the defendant's consent. And again, that's our argument. On any basis supported by the record, the defendant consented to turning his keys over to the officer while the officer is conducting his preliminary investigation. Or her, I should say. Sorry, her. That's okay, Eric. Did the judge make a finding as to whether or not handing over the keys was with consent or under duress? Did not. Did not comment on that at all. And that's our argument, that there was some type of, the will was overborne because the officer asked for this, based on the statement that was made contemporaneously with handing over those keys. And he said, oh, well, we're here already. We're here already. Something to that effect. Indicating, obviously, okay, well, you know, you're going through this. And I think. You've gone from 8 to 16 and maybe 32. It's a $64,000 question. Okay. Different plateaus. Got it. We're here already. Right? Isn't that what you're implying? Right. Yeah. Where are we? You've already gone from, again, I think what he's saying is we've gone from community caretaking to arrest because we're here already. That's essentially what I think this individual is saying, which Pellegrino was saying at the time is, okay, we've done this and we're getting out. And another issue that I have again. Is it your position then the defendant didn't have a choice at that point? He did not feel he had a choice at that point. Knocked on the window. He was on the phone. He didn't testify. He didn't. So how do you know? Based on. There's nothing in the record to suggest that he felt that he was compelled to turn them over. Based on that statement, Your Honor. Based on that statement. An officer coming up where he's sitting parked in a parking lot with his car off. And, again, that was part of the credibility issues at the trial court. He tells the officer, I have no idea. When someone who has been driving the car and they're asked if he hit a deer and they say they have no idea. He said no clue. Is that a sign that there might be something going on here? I think it could be. But I don't. And I will tell you this, I'm having a hard time remembering whether that was before or after the keys. Because I do remember him being on the phone, having a conversation on the phone. She asked for something about being okay. And, again, there was no criminal activity afoot at that point. Bailey, you had criminal activity. You had an individual who was speeding. You had an individual who had slapped Oliver's face, who was moving slowly. In Bailey, the comment about taking the keys was an alternative holding, correct? It was good, though. I didn't read it that way, but Your Honor is obviously going to be the one making the decision on this. Because I think at the very end of that case, they indicated, and they did call it an arrest. They did call that an arrest in Bailey. They indicated that Bailey's seizure of the defendant's keys was tantamount to an arrest in that case. But, again, at that point, they had a traffic violation, which we don't have here. They had indications of a lengthy investigation. They waited for another officer to arrive, and then they took the keys. At that point, they had that. Here we had 29 seconds without any traffic violations, without any bad driving, without any physical movements on the part of this individual. They didn't see how he operated and how he moved. Obviously, the order of alcohol is not sufficient for DUI. And she said he had third speech. The trial court did not agree. The trial court did not hear that on the video at all and said something about the eyes as well. And the trial court also commented on the fact that there was no comment about the propane tanks in either of the previous hearings. In the previous hearing, they didn't talk about it at all, and then they came up with it was officer safety. There was no indication that she felt unsafe at all. And we do take, this is a new officer. It was her, I think, 50th DUI arrest, and she had to ask for help on how to do a field sobriety test after this. But we do understand that we think that she arrested that judgment and seized this individual without anything, without any indication of reasonable or not. She comes up within 20 seconds. He's saying seized that individual. Again, a Terry stop is a seizure. It's whether or not there's reasonable suspicion. And here, it's not even, it's consent. The judge said she's performing a community caretaking function, and she asked for the keys. And again, how is that not consensual? I guess the issue that I'm having here, Hunter, is that if you're taking the keys, I don't know that it's community caretaking. I don't know that it can be. At what point does it turn into a Terry stop? And I think it's got to be within that 30 seconds. It's within that 30 seconds where a judge doesn't hear any slurring, takes issue with the odor of alcohol, even if that, and she says there's glassy eyes. So I guess there's, I don't know where the community caretaking starts and the Terry starts in the state's eyes. Well, what's our standard of review on the ultimate issue as to whether or not the trial court erred in suppressing the evidence? Well, I believe it's de novo review on that. But obviously the trial court made some findings of credibility that your honors will follow. Incidentally, Mr. Brennan, she asked him, did you hit something, and he said no clue. And then she asked for the keys. And I don't have a recollection. I knew there was that conversation. And there was multiple conversations throughout that were placed in here. Right. So. Did I call you Dixon? I'm sorry. I think I called him Liam Brennan. You did, but that's okay. I'm not on the third district yet. I've never been. Yet. What's that? You're a fan. Oh, of course. I'm kidding, but yeah, we're going to get together and follow Liam's and put him all together in one group. Are you in relation to Pat Dixon? I am. He was my father. How's he doing? He passed. He passed? That's what I thought. 2011. He was well known and respected in Kane County. Well, thank you. They actually did. He introduced me to you, but I was much shorter back then at the time. So. Very good. Thank you. Is there no further questions? Thank you. No, thank you. Ms. Wells, you may proceed.  I just have a couple of things that I want to reply to. I know opposing counsel is a little taller than me, so let me adjust the microphone. First of all, the trial court never made any credibility findings per se as to the officer. He made a couple of comments about things, specific things, where the propane tanks were, as well as her, that she made a mistake when she testified the first time about the vehicle being on versus shut off at the time she asked for the keys. But at no time did the trial court in any of its rulings find that the officer was not credible per se, indicating that all of her testimony should be thrown out. Regardless, the video speaks for itself. And I would argue as to the officer's safety, I would disagree with my colleague because asking for the keys in 29 seconds after he says he has no clue if he hit anything and he's sitting behind the wheel of a two-ton vehicle shows that the officer was concerned about her safety. She didn't wait. She immediately asked for the keys so he couldn't drive straight forward into the people, into gas tanks or anything else. Justice Burkett has asked several questions, and it is the difference between the seizure, which we conceded below, and we conceded on appeal. There was a seizure at the time the keys were taken. Justice Burkett has indicated that you can affirm a name record, and it might have been a consensual taking of the keys. But that being said, the mere fact that there was a seizure, as I have argued, does not equate with an arrest. And the trial court engaged in no analysis of whether this was Terry Sapp, just disregarded that analysis altogether. And that being said, you can't do away with 60 years of precedent of Terry. And in one fell swoop, and just not do the analysis whatsoever. The difference between this Terry Sapp and arrest is the life of the detachment and the scope of the following investigation. And here, everything was focused on the DUI. She looked at whether there was an accident. She looked at... Yeah, so it's all focused on a DUI. So isn't that more proof that this was an arrest and that she acted prematurely? If it was all based on safety and community caretaking, it would be a little different. The questions would have been a little different, correct? No, because the investigation for Terry Sapp has to be focused on the criminal conduct that she has reasonable suspicion for. And her reasonable suspicion, pardon my pronunciation, her reasonable suspicion was whether there was a DUI. So she was all focused on whether he had been in an accident, where he had been, if he had anything to drink. That investigation was specifically related to the DUI. Ultimately, there was damage on a vehicle, correct? Yes. About eight minutes into the video, she walks in front. She sees blood. She sees fur. She asks him in. Interestingly enough, in contrast with the earlier statement of, I have no clue if I hit anything, he now says that he hit a deer and he was flustered and... And that's why he pulled over. And that's why he came into the gas station. And he declined the opportunity to look at the damage to the vehicle because he said he'd already seen it. So part of the reasonable suspicion I want to point out in this case is the time that it was in the early hours of the morning. And the officer did hear a conversation about getting drunk over the audio of the vehicle when he first rolled down the window, in addition to smelling the odor of alcohol. And I don't know how the counsel had argued that the trial court didn't believe the odor of alcohol. I don't know how the trial court could have disregarded that because it wasn't on the video and the trial court made no statements about not believing that she smelled the alcohol. So unless there are any other questions? It seems like you're making an alternative argument in the sense that you're arguing that it's a Terry stop and therefore this is kosher. Correct. You also seem to be arguing that the turning over the keys was voluntary and therefore it wasn't a Terry stop. I was following up on what Justice Burkett had indicated in his questioning. That was not our original argument. As we conceded below and we conceded in our brief, we forfeited any argument that it was consensual because we didn't argue that below. But as we are well aware, and Justice Burkett pointed out, you can affirm on any basis in the record. We can affirm on any basis. No, you can affirm on any basis in the record. I apologize for that. If it was missing from the record, that argument should have been made and it was not. It was not made below, which is why we did not make it on appeal either. But I do understand that the court can affirm on any basis in the record and you would ask questions about it, which is why I brought it up. Were the type of keys in question proximity keys? They were filed, yes. Proximity, that means that if you have a key, there's an electronic device that communicates with the car. Right. And he could have started the car if it was this proximity key. He may not have gotten far because she held it in her hands or whatever, but he could have at least started the car. My understanding is that those electronic keys, those fobs, as I've referred to them too, if they have to be inside the vehicle in order to start it, mine does. So I guess the officer could have had the same misunderstanding as I did, that if it's outside the vehicle, you can't start it. But I know there are some that you cannot start. Okay. Okay. Very good. Thank you. Thank you. This was the last case on the call today. We will take the case under advisement and render a decision in apt time. Court is adjourned.